Margaret NEWHOUSE, et al.,
Appellants,

v.

SETTEGAST HEIGHTS VILLAGE
APARTMENTS, Appellee.

No. B14–85–983–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Aug. 7, 1986.

Rehearing Denied Sept. 18, 1986.

Robert C. Sohns, Jr., Houston, for appellants.

Carneige H. Mims, Houston, for appellee.

Before PAUL PRESSLER, SEARS and CANNON, JJ.

OPINION

SEARS, Justice.

In this case of first impression, Settegast Heights Village Apartments (appellee), initiated a forcible detainer suit in the Justice of the Peace court against appellants, Margaret Newhouse and all occupants (hereinafter collectively referred to as Newhouse). The suit sought to evict Newhouse from her residence at appellee's apartment complex because her lease had expired and the owner desired possession of the premises. After unsuccessfully defending herself in that court, Newhouse appealed the decision to County Civil Court at Law No. 3 for a trial de novo. The trial court entered judgment for appellee. Newhouse perfects her appeal to this court pursuant to Section 24.007 of the Texas Property Code. We reverse the judgment of the trial court and render judgment permitting Newhouse to retain her tenancy at the Settegast Heights Village Apartments.

At the outset we must determine whether this court has jurisdiction to hear Newhouse's appeal. Section 24.007 of the Property Code, effective September 1, 1985, provides in pertinent part:

A final judgment of a county court in a forcible entry and detainer suit or a forcible detainer suit may not be appealed on the issue of possession unless the premises in question are being used for residential purposes only.

Tex.Prop.Code Ann. § 24.007 (Vernon Supp.1986).

Neither party to this dispute has given this court guidance on the issue of whether Newhouse's premises were being used for residential purposes only, as Section 24.007 requires. While no direct evidence was elicited on this point at the trial court, a careful review of the record and circumstances surrounding this case leads us to the conclusion that the apartment was being used for residential purposes only.

We note first of all that appellee is a federally subsidized *multifamily housing project* which receives the benefit of subsidy in the form of payments under the Additional Assistance Program for Projects with HUD–Insured and HUD–Held Mortgages pursuant to Section 8 of the United States Housing Act of 1937 and the regulations at 41 Fed.Reg. 12,170 (1976). *See* 24 C.F.R. § 247.2 (1985). The Section 8 Lower-Income Housing Assistance program was enacted to aid lower-income families in obtaining a decent place to live and to promote economically mixed housing. 42 U.S.C. § 1437f(a) (1976 & Supp. V 1981). To achieve these goals, HUD-assisted Section 8 properties are subsidized, with HUD paying to the landlord for the tenant's benefit the difference between the fair market rental value of the apartment and the amount actually paid by the tenant, which is generally no more than thirty percent of the family's monthly adjusted income. The fair market rental value of the Newhouse apartment is $376.00 per month. Of this amount Newhouse pays $95.00 per month; HUD pays the remaining $281.00 per month. By definition, then, the HUD regulations governing Section 8 properties such as appellee apply only to residential premises.

Moreover, Paragraph 13 of the lease agreement between Newhouse and appellee provides that "[t]he Tenant shall use the premises only as a private dwelling for himself/herself and the individuals listed on the *Certification and Recertification of Tenant Eligibility.*" Appellee sought to evict Newhouse for no other reason except that the term of the lease had expired and the owner desired possession of the premises. Had Newhouse been using the premises for some other, nonresidential purpose, appellee would have made this an additional ground for eviction, as Newhouse would then have been in express violation of the lease.

■ Since Newhouse was required to use the premises solely for residential purposes, not only pursuant to HUD regulations, but also pursuant to her individual lease agreement, and since appellee has failed to allege the contrary, we hold that the premises in question were used for residential purposes only. We therefore have jurisdiction to hear this appeal pursuant to Section 24.007 of the Property Code.

■ Having determined that jurisdiction lies with this court, we turn now to the merits of the appeal. In a single point of error Newhouse complains that the trial court erred in evicting her because appellee did not show good cause for the eviction, as is required by the lease agreement and HUD rules and regulations. As was stated previously, appellee is a recipient of federal subsidies pursuant to the Section 8 Housing Assistance Payments program, 41 Fed. Reg. 12,170 (1976). As such, appellee has consented to be regulated by HUD eviction procedures. When appellee entered into its contract with HUD, it agreed to be bound by those regulations and by the handbooks promulgated by HUD to aid in their implementation. Therefore, any attempt to terminate the tenancy of Newhouse (or any eligible tenant) must comply with HUD requirements, as well as with state law.

Appellee's lease agreement with Newhouse also indicates this requirement. Paragraph 2 of the agreement provides that after the initial lease term ends, the agreement will continue for successive terms, unless automatically terminated as

permitted by Paragraph 23 of the agreement. Paragraph 23 provides in pertinent part that:

Any termination of this Agreement by the Landlord must be carried out in accordance with HUD regulations, State and local law, and the terms of this Agreement. The Landlord may terminate this Agreement *only* for:

1. the Tenant's material noncompliance with the terms of this Agreement;

2. the Tenant's material failure to carry out obligations under any State Landlord and Tenant Act; or

3. other good cause, which includes but is not limited to the Tenant's refusal to accept the Landlord's proposed change to this Agreement. Terminations for "other good cause" may only be effective as of the end of any initial or successive term (emphasis added).

■ Evictions from a project such as appellee are further governed by the rules and regulations found at 24 C.F.R. Part 247 (1985) (formerly 24 C.F.R. Part 450 (1976)). Section 247.2(a) defines eviction as "the dispossession of the tenant from the leased unit as a result of the termination of the tenancy, including a termination prior to the end of a term or at the end of a term." Section 247.3, entitled "Entitlement of tenants to occupancy," states that:

(a) *General.* The landlord *may not* terminate any tenancy in a subsidized project *except* upon the following grounds:

(1) Material noncompliance with the rental agreement,

(2) Material failure to carry out obligations under any state landlord and tenant act, or

(3) Other good cause.

24 C.F.R. § 247.3(a) (1985) (emphasis added).

In its discussion of the comments received on proposed Part 450 (now published at 24 C.F.R. Part 247), the Department of Housing and Urban Development stated the following with regard to proposed Section 450.3 (now Section 247.3):

1. A number of comments stressed the desirability of retaining the landlord's common law right to terminate occupancy at the expiration of a term with or without good cause. Many of these comments noted that the viability of a project depended in part on the ability of management to evict tenants who disrupted the livability of the project. In the opinion of these commentators, tenants are frequently reluctant to testify at an evidentiary hearing against a fellow tenant.

After carefully considering this category of comment, the Department has determined that this position cannot be accepted. The basic purpose of the proposed regulation is to reflect the increasing body of judicial opinions that occupancy in a subsidized housing project is in the nature of a welfare entitlement and that tenants in these units are entitled to basic substantive and procedural protections. The right of management to make management decisions without the need to prove its case at an evidentiary hearing must be balanced against the countervailing consideration that persons receiving the benefits of subsidized housing not be denied these benefits arbitrarily.

Comments to proposed 24 C.F.R. § 450.3, 41 Fed.Reg. 43,331 (1976).

In discussing the proposed eviction notice requirements and whether state laws would be affected, HUD further commented that "the right of a tenant to a continued renewal of the term unless good cause is shown is created by this regulation (and implementing leases)...." Moreover, in its November, 1981 handbook addressed to program participants such as appellee, HUD states the following in the section dealing with termination of tenancies:

Tenancy may be terminated by either the Tenant or the Owner. The Tenant must give the Owner thirty days written notice before moving from the unit. The model lease provides that the Owner may evict a Tenant only for material non-compliance with the lease agreement, materi-

**134**

al failure to carry out obligations under any State Landlord and Tenant Act, or other good cause. Terminations based upon "other good cause" may be effective only at the end of a lease term. *The Owner may not refuse to renew a lease based solely on the fact that an initial or subsequent renewal term has expired* (emphasis added)....

Even a cursory reading of these sources indicates that appellee is required to abide by HUD regulations. Furthermore, there is no doubt that HUD regulations require landlords such as appellee to state good cause before evicting tenants. The *only* cause shown by appellee is the expiration of the lease. HUD materials also make it clear that landlords may not refuse to renew a lease solely because the term has expired. Therefore, appellee has failed to comply with both the lease agreement in question and the HUD rules and regulations by which it is governed. We sustain Newhouse's point of error.

Accordingly, the judgment of the trial court is reversed, and this court renders judgment allowing Newhouse to retain her tenancy.