NUMBER 13-01-143-CV

 

                             COURT OF APPEALS

 

                   THIRTEENTH DISTRICT OF TEXAS

 

                                CORPUS CHRISTI

 



 

911
GLEN OAK APARTMENTS,                                              Appellant,

 

                                                   v.

 

DARRELL WALLACE AND 

ALL OTHER OCCUPANTS,                                                    Appellees.

 



 

                   On appeal from the County Court at Law No. 5

                                  of Nueces
County, Texas.

 



 

                                   O P I N I O N

 

                      Before Justices Dorsey, Yañez, and
Castillo

                                  Opinion by Justice Dorsey

 








Darrell Wallace is a resident of 911 Glen Oak Apartments (AGlen Oak@).  Glen Oak is the owner of multi-family
housing, subsidized by the Department of Housing and Urban Development (HUD)
and subject to its rules.  Glen Oak filed
suit in justice court seeking to evict Wallace because she allegedly:  held over the premises following a notice of
non-renewal of her lease; failed to timely pay rent; and she was involved in
multiple loud disturbances at the complex. 
Glen Oak prevailed in the justice court, and Wallace perfected an appeal
from that judgment to the county court at law. 
Following a bench trial the trial court entered judgment for
Wallace.  The question on appeal is
whether Wallace=s conduct gave
Glen Oak a reason not to renew her lease, and thus, evict her from the
premises.  We affirm.

                                           I. Analysis

By three issues Glen Oak argues that the trial court erred in
failing to order Wallace=s eviction,
because (1) she was a hold-over tenant at sufferance, (2) she was in material
non-compliance with the lease for failing to pay rent for November, 2000, and
(3) she was involved in multiple loud disturbances and disruptions, which
disturbed the peace and quiet enjoyment of the premises, each of which
constituted a material non-compliance with the lease.  At the heart of this case is whether Wallace=s conduct gave
Glen Oak a reason not to renew her lease and the trial judge's view of that
evidence.  We answer this issue by
examining the terms of the lease and the evidence adduced at trial.

                                                     I. The Lease








Paragraph 2 of the lease stated that AAfter the
initial term ends, the Agreement will continue for successive terms of one
month each unless automatically terminated as permitted by paragraph 23
of this Agreement.@  (emphasis added).  Paragraph 23, subsection b states:  AAny termination
of the Agreement by the Landlord must be carried out in accordance with HUD
regulations, State and local law, and the terms of this Agreement.@  This subsection allowed the landlord to
terminate the lease only for those reasons listed in the agreement.  Relevant to the facts of this case these
reasons are:  (1) the tenant=s material
non-compliance with the lease terms; or (2) the tenant=s material
failure to carry out obligations under any state landlord and tenant act; or
(3) criminal activity that threatens the health, safety, or right to peaceful
enjoyment of the premises by other tenants; or (4) Aother good
cause[[1]]
. . . .  Terminations for >other good
cause= may only be
effective as of the end of any initial or successive term.@

                                      II. The Conflicting Evidence

                                               Glen
Oak=s Evidence








During trial of this case Glen Oak introduced into evidence a
notice of non-renewal of the lease, which it had sent to Wallace.  The notice told her that Glen Oak would not
renew her lease and that the lease was terminated effective October 31,
2000.  The reason for termination was
material non-compliance with the lease and related documents and HUD
rules.  The notice listed numerous
incidents, beginning on April 14, 2000. 
These incidents concerned (1) Wallace=s children violating curfew, creating a
disturbance, and showing disrespect to other residents, (2) Wallace, her
occupants, and/or guests creating disturbances involving loud music late at
night, (3) on July 4, 2000, Wallace, her occupants, and/or guests consuming
alcohol and creating a loud disturbance in public areas of the complex, and (4)
Wallace swinging a golf club at other residents or guests.  Several of these incidents required police
intervention.

Shelia Vanecek, manager of Glen Oak Apartments, testified that
Wallace was required to pay rent for November, 2000, but failed to pay it.  Vanecek stated that she had received
complaints about Wallace=s temper, loud
music, disturbances, and consumption of alcohol outside the apartment unit, all
of which are serious violations of the lease. 
She gave several examples of Wallace=s behavior as follows:  (1) Wallace was reported to have swung a golf
club on the premises; (2) when Wallace=s car was being
towed from the complex, she came into the manager=s office irate and cursing; (3) when
Wallace discovered that Glen Oak=s management
removed items from her balcony, she became upset and used foul language; and
(4) Wallace=s children were
out after curfew, making a disturbance, and showing disrespect to other
residents.  

On cross-examination Vanecek denied refusing to accept rent
from Wallace.  Her testimony was that
Wallace=s behavior
threatened the health or safety of other tenants.








Glen Oak called three other witnesses to testify about Wallace=s behavior at
the complex.  Eudelia Soto testified that
she saw Wallace at the complex, swinging a golf club while a lot of children
were around.  Her testimony was that
Wallace used the club as a weapon and Awent at [a
tenant] with the golf club.@

Gwen Monroe, Wallace=s neighbor,
testified that Wallace caused disturbances ranging from loud music to verbal
outbursts.  On one occasion Monroe called
911 to report a disturbance that occurred at a party Wallace was having.  These disturbances usually occurred after
10:00 p.m. and disturbed Monroe=s peace and
quiet enjoyment.  She denied telling Pam
Forbes anything about getting Wallace out of Glen Oak.

Vicky Ratliff lived next door to Wallace.  She had made several complaints about the conduct
of Wallace and her occupants or guests. 
She complained that Wallace played loud music after 10:00 p.m.  This noise disturbed her and her children.  In April, 2000, Wallace yelled at Ratliff,
telling her that she Awrote her
[Wallace] up and got her in trouble.@  Ratliff called the police numerous times
complaining about Wallace=s loud music.

                                                Wallace=s Evidence








Wallace had lived at Glen Oak Apartments for fourteen
years.  She said that she tried to pay
her November rent, but the landlord would not accept it.  She believed that the numerous disturbances
listed in the notice to vacate were based on the complaints of one neighbor
with either unreasonable sensitivities and expectations and/or a bias against
her.  She did not believe that she
violated her lease.  Her testimony was
that management was trying to evict her for personal reasons related to the
relationship between her son and the manager=s daughter.  When asked if her children violated curfew
she said that they did come home late one night from a church meeting and were
talking outside Vicky Ratliff=s window.  This caused Ratliff to holler and scream at
them.  She admitted to having a Fourth of
July party, saying it involved Ano violent
disturbance.@  She denied swinging a golf club at anybody at
the complex, and she denied swearing at anyone when her car was towed.

Letonia Jackson, a former resident of Glen Oak, saw Wallace
grab a golf club from Wallace=s grandson, but
did not see her swing it at anybody.  She
did not know Wallace to be noisy, disturbing, or to cause problems in the
apartment units. 

Pam Forbes, a former Glen Oak resident, lived in the apartment
above Wallace.  She never heard lots of
noise or loud music.  Her testimony was
that Gwen Monroe told her that Athey were
planning to get Ms. Wallace out.@

Wallace=s daughter,
Kimberly, was a former Glen Oak resident and had lived in a separate unit above
her mother.  Kimberly never had problems
with noise or music coming from Wallace=s apartment.

Michelle Garza=s testimony was
that she had Wallace=s children from
May 28, 2000, to August 8, 2000.  During
this time the children did not return to Glen Oak Apartments.  She stated that Wallace provided the children
a good, stable, safe home environment.








Glen Oak argues that its evidence demonstrated good cause for
its decision not to renew Wallace=s lease and
that good cause is not as stringent a standard as Amaterial
non-compliance.@  Glen Oak points out that the Houston First
Court of Appeals has defined good cause to include Abut not be
limited to non-eligibility for tenancy, action or conduct of the resident which
disrupts the livability of the project by adversely affecting the health or
safety of any resident, or the right of any resident to the quiet enjoyment of
the leased premises and related project facilities or that has an adverse
financial effect on the project.@[2]  Wallace points out that HUD Handbook 4350.3
addresses the standard for good cause. 
HUD Handbook 4350.3 ' 4-20 CHG-22
(June 1992).  That section provides, AHUD does not
determine whether a particular situation constitutes good cause.  Any issue regarding the existence of good
cause is resolved in the landlord-tenant court in an action for eviction of the
tenant.@  HUD Handbook 4350.3 ' 4-20 CHG-22
(June 1992). 








We point out that even though good cause may be a less
stringent standard than material non-compliance, the evidence in this case does
not demonstrate good cause as a matter of law to support Glen Oak=s decision not
to renew the lease.  After hearing the
evidence the trial court entered judgment that Glen Oak take nothing by its suit.  The court made the following relevant
findings of fact:  (1) the evidence was
insufficient to prove a lease violation; (2) both parties provided evidence
concerning the claims put forward by Glen Oak for the eviction and that there
was conflicting evidence concerning most of the testimony provided; (3) Glen
Oak failed to meet their burden in establishing that there had been a lease
violation for claims of numerous loud disturbances that threatened the health
and safety of other tenants or their quiet enjoyment of the property; and (4)
Glen Oak failed to meet their burden to establish that there had been a lease
violation for late payment of rent. 
After reviewing all the evidence we find some evidence of probative
value to support the trial court=s
findings.  We also find that the findings
are not so contrary to the overwhelming weight and preponderance of the
evidence that they are clearly wrong and manifestly unjust, nor do we find that
the great preponderance of the evidence supports their nonexistence.  See Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); Dyson v. Olin Corp., 692 S.W.2d 456, 457 (Tex. 1985); In
re King's Estate, 244 S.W.2d 660, 661 (Tex. 1952). 

                                             Tenancy
At Sufferance

A tenant who remains in possession of the premises after
termination of the lease occupies "wrongfully" and is said to have a
tenancy at sufferance.  Bockelmann v.
Marynick, 788 S.W.2d 569, 571 (Tex. 1990). 
Accordingly Wallace would have a tenancy at sufferance only if she
remained in possession of the premises after termination of the lease.








Here Paragraph 2 of the lease stated that when the initial
lease term ended, the lease was to continue for successive terms of one month
each unless automatically terminated as permitted by paragraph 23.  By its terms the lease expired June 30, 1998;
therefore, the lease continued for successive terms of one month each, and
Wallace was a month-to-month tenant.  The
trial court determined that Glen Oak could not terminate the lease.  Moreover, when deciding whether a landlord
may terminate a lease involving federally subsidized housing as in this case,
landlords may not refuse to renew a lease solely because the term has
expired.  Newhouse v. Settegast
Heights Village Apartments, 717 S.W.2d 131, 134 (Tex. App.BHouston [14th
Dist.] 1986, no writ).  Accordingly Glen
Oak could not refuse to renew the lease due to its expiration.  We hold that the trial court did not err in
failing to find that Wallace was a hold-over tenant at sufferance.  We overrule the three issues.

We AFFIRM the trial court=s judgment.

 

 

______________________________

J.
BONNER DORSEY,

Justice

 

Publish.

Tex.
R. App. P. 47.3(b).

 

Opinion delivered and
filed

this 11th day of July,
2002.











[1]Section 1715z-1b(b)(3)
of the United States Code states, Aleases approved by the
Secretary provide that tenants may not be evicted without good cause or without
adequate notice of the reasons therefor and do not contain unreasonable terms
and conditions.@  12 U.S.C. ' 1715z-1b(b)(3). 
The regulation implementing this statute states that no tenancy in the
relevant federally subsidized program shall be terminated without good
cause.  24 C.F.R. 247.3(a) (2001).





[2]Citing Callahan v.
Trinity Arms, Ltd., (Tex. App.BHouston [1st Dist.]
1992, no writ) (not designated for publication).