Opinion issued June 8, 2006



     















In The
Court of Appeals
For The
First District of Texas




NO. 01-05-00085-CV




MARY JANE NEALY, Appellant

V.

SOUTHLAWN PALMS APARTMENTS, Appellee





On Appeal from the County Civil Court at Law No. 4
Harris County, Texas
Trial Court Cause No. 820,684





O P I N I O N
          This appeal arose from a forcible detainer action brought in the justice court
by appellee, Southlawn Palms Apartments (“SPA”) against appellant, Mary Jane
Nealy, a tenant, for alleged violations of lease terms and conditions. Both the justice
court and, on appeal, the county civil court at law ordered Nealy’s eviction from the
premises. On appeal to this Court, Nealy complains of the following errors: (1)
because SPA’s notice of termination of tenancy failed, the evidence is legally
insufficient to support the forcible detainer judgment; (2) the evidence of “mooning”
other tenants is legally and factually insufficient to support the forcible detainer
judgment; and (3) the trial court erred in admitting evidence that was never disclosed
in response to proper discovery requests. We reverse the judgment and remand the
cause.
BACKGROUNDIn January 2002, Nealy entered into a one-year written lease agreement with
SPA, a federally subsidized apartment complex regulated by Section 8 of the Housing
Act of 1937, 42 U.S.C. § 1437f (2000 & Supp. 2005), and Title 24 of the Code of
Federal Regulations, 24 C.F.R. § 882.101 (2006). The lease provided that the term
would run from January 22, 2002 to January 21, 2003 and would automatically renew
on a month-to-month basis at the expiration of its initial term. The lease also
provided that SPA could terminate the tenancy for (1) a serious or repeated violation
of the terms and conditions of the lease; (2) a violation of federal, state, or local law
that imposed obligations on Nealy in connection with the occupancy or use of the
contract unit and the premises; (3) criminal activity; or (4) other good cause. Before
SPA could terminate the tenancy, the lease required that SPA provide a notice of
termination that complied with United States Department of Housing and Urban
Development (“HUD”) requirements. See 24 C.F.R. § 882.101 (2006).
          On April 28, 2004, SPA sent Nealy a “30 Day Notice to Vacate” the premises
and listed two reasons for the notice to vacate: (1) “Owner desires possession” and
(2) “Un-desirable tenant behavior.” SPA later filed this forcible detainer action
against Nealy, citing “un-desirable tenant behavior” as the sole ground for eviction. 
During discovery, Nealy served a written interrogatory asking SPA to identify each
act of undesirable tenant behavior on which SPA relied for evicting Nealy, including
“what was done, by whom and when in breach of the lease.” SPA responded that
“Ms. Nealy breached her lease by violating the rules of Southland Palms Apts. and
by violated [sic] the Blue Star Addendum. It was reported that Ms. Nealy mooned
another tenant.”



          At trial, over objection, SPA’s manager testified that Nealy continuously
loitered on the premises and rode a four-wheeler or tractor on the sidewalks, nearly
hitting children on one occasion. SPA also introduced evidence, over objection, that
Nealy and a guest had each been the victim of assaults during Nealy’s tenancy.
NOTICE OF TERMINATION
          In her first point of error, Nealy argues that the notice failed to comply with
HUD’s specificity requirement for termination notices and that there is no evidence
to support the forcible detainer action because SPA’s notice of termination of tenancy
failed, as a matter of law, to terminate Nealy’s tenancy.
          To terminate a tenancy in federally subsidized housing, federal regulations and
due process both require adequate notice detailing the grounds for termination. Moon
v. Spring Creek Apartments, 11 S.W.3d 427, 433 (Tex. App.—Texarkana 2000, no
pet.). The rules and regulations set forth by HUD mandate that the landlord’s
termination notice “[s]tate the reasons for such termination with enough specificity
to enable the [tenant] to prepare a defense.” 24 C.F.R. § 882.511(d)(2)(i) (2006); see
24 C.F.R. § 247.4(a)(2) (2006) (providing the same).


 Because SPA participated in
HUD’s federal subsidy program, SPA obligated itself to act in accordance with
federal rules and regulations. See Newhouse v. Settegast Heights Vill. Apartments,
717 S.W.2d 131, 132 (Tex. App.—Houston [14th Dist.] 1986, no writ). The purpose
of requiring that the notice state reasons for the termination is “to insure that the
tenant is adequately informed of the nature of the evidence against him so that he can
effectively rebut that evidence.” Escalera v. New York City Hous. Auth., 425 F.2d
853, 862 (2d Cir. 1970). Thus, termination notices have been found to be insufficient
when they contain only one sentence, are written in “vague and conclusory” language,
or fail to set forth a factual statement of the reason for termination. For instance, in
Associated Estates Corp. v. Bartell, the court found the following language to be
insufficient to notify the tenant of the specific grounds for termination of her lease:
“[s]erious, repeated damage to unit. Repeated disturbance.” 24 Ohio App. 3d 6, 10,
492 N.E.2d 841, 846 (1985). The court characterized the notice as “blanketed in
broad language” and concluded that it did not afford the tenant due process, as
required by the federal regulations. Id.
          Similarly, in Housing Authority of Dekalb County v. Pyrtle, the court
determined that a notice was deficient because it failed to provide the tenant with the
reasons upon which the termination was based sufficient to afford the tenant an
opportunity to prepare a meaningful rebuttal. 167 Ga. App. 181, 183, 306 S.E.2d 9,
11 (1983). The Pyrtle notice stated the following reason for termination: 
Repeated incidents of intoxication and irresponsible use of the kitchen
facilities in your Unit [which] have imposed a threat [to] the peaceful
enjoyment and safety of your neighbors. This conduct results in a
violation of the provisions [of the lease and because of the violations]
by you . . . you are hereby notified that your Lease shall be terminated
in ten days from the date of this Notice.

167 Ga. App. at 182, 306 S.E.2d at 10–11 (brackets in original).
          Courts have found short, one-sentence termination notices inadequate even
when they specified the individual involved in the wrongdoing. Escalera, 425 F.2d
at 858 n.2, 862 (indicating the reasons for termination were the “[r]ecord of antisocial
activities and arrests of your son, Fred, Jr., constituting a threat to the peace and
safety of the community” and “[i]llegal acts of Mr. Humphrey, having an adverse
effect on the project and its tenants”). Also, courts have held rather extensive notices
to be inadequate when they failed to notify the tenant of the dates of the alleged
violations. Cuyahoga Metro. Hous. Auth. v. Younger, 93 Ohio App. 3d 819, 826, 639
N.E.2d 1253, 1257 (1994).
          In the present case, the notice sent to Nealy stated only “Owner desired
possession” and “Un-desirable tenant behavior.” This notice failed “to set forth a
factual statement of the incident or incidents which constituted the grievance.” Hous.
Auth. of King County v. Saylors, 19 Wash. App. 871, 874, 578 P.2d 76, 79 (1978). 
The notice contained one vague and broad allegation that Nealy engaged in some type
of undesirable behavior, but did not set forth the behavior SPA was complaining
about. The notice also failed to notify Nealy of the dates of any incidents or of the
people involved. Absent any of these details, the notice of termination failed to meet
the specificity requirements outlined in the federal regulations and existing case law. 
We conclude the notice provided to Nealy was inadequate.
          SPA contends that, even if the notice was inadequate, Nealy has not been
harmed because she had actual knowledge of the reasons for her lease termination. 
SPA relies on Hill v. Paradise Apartments, Inc. for this proposition. 182 Ga. App.
834, 357 S.E.2d 288 (1987). In Hill, the court held that when a tenant has not been
harmed by the landlord’s failure to provide adequate reasons for the termination of
the tenancy, the judgment ordering eviction will not be overturned on appeal. 182
Ga. App. at 836, 357 S.E.2d at 290 (citing Smith v. Hendrix, 162 Ga. App. 299, 302,
290 S.E.2d 504, 507 (1982)). The Hill court based its conclusion on the grounds that
(1) the tenant was sent a termination letter that specifically explained the wrongful
conduct, (2) the tenant was given 10 days to discuss the basis of her termination with
the landlord, and (3) the tenant had an attorney, who actively pursued pretrial
discovery, to represent her. 182 Ga. App. at 837, 357 S.E.2d at 290.
          Despite Georgia’s harm requirement, many other jurisdictions, such as New
Jersey, New York, Rhode Island, Connecticut, and Ohio, have held that inadequate
notice deprives a court of subject-matter jurisdiction, thus requiring automatic
reversal or dismissal, regardless of harm.


 Riverview Towers Assocs. v. Jones, 358
N.J. Super. 85, 88, 90, 817 A.2d 324, 327 (2003); Hedco, Ltd. v. Blanchette, 763 A.2d
639, 643 (2000); Jackson Terrace Ass’n. v. Patterson, 155 Misc. 2d 556, 557, 589
N.Y.S.2d 141, 142 (1992); Cent. Brooklyn Urban Dev. Corp. v. Copeland, 122 Misc.
2d 726, 729, 471 N.Y.S.2d 989, 992 (1984); see Bella Vista Apartments v. Herzner,
125 Ohio Misc. 2d 1, 4, 796 N.E.2d 593, 595 (2003); Glastonbury Hous. Auth. v.
Martinez, No. 82600, 1995 WL 621849, at *2 (Conn. Super. Ct. Oct. 16, 1995);
Stratford Hous. Auth. v. Reese, No. SPBR-9411 28443, 1995 WL 264020, at *2
(Conn. Super. Ct. April 7, 1995). The federal courts that have addressed deficient
notices have not confronted the issue at hand because, in those cases, the tenants filed
motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Escalera,
425 F.2d at 862; Swords to Plowshares v. Smith, 294 F. Supp. 2d 1067 (N.D. Cal.
2002). Neither Escalera nor Swords to Plowshares engaged in a harm analysis after
having found the termination notices deficient.
          One Texas case exists in which the issue arose, but the court passed on
deciding if harm was required. In Moon v. Spring Creek Apartments, the Texarkana
Court of Appeals found that the notice of eviction provided to the tenant was
inadequate.


 11 S.W.3d at 434. The apartment complex argued that the inadequate
notice did not require reversal because the error was harmless. Id. The court stated,
“Either way [whether harm is required or there is a lack of subject-matter
jurisdiction], reversal is required in this case, because the record supports a showing
of harm in that Moon was unable to prepare her defense.” Id. at 435. Thus, no
definitive answer lies in Texas on whether harm is required or there is a lack of
subject-matter jurisdiction when a notice to vacate federally subsidized housing is
inadequate.
          We look to the Texas Supreme Court’s holding in Dubai Petroleum Co. v. Kazi
to guide the resolution of this issue. See 12 S.W.3d 71, 76–77 (Tex. 2000). In Kazi,
the Texas Supreme Court disapproved of a long line of cases holding that, when a
claim is based on a statute, the statutory provisions are mandatory, exclusive, and
require compliance in all respects, or the trial court will lack subject-matter
jurisdiction. See id. at 75–77. The Kazi court sided with the modern trend that treats
failure to comply with statutory requirements as defeating a claimant’s right to relief,
but not defeating the trial court’s jurisdiction:
The modern direction of policy is to reduce the vulnerability of final
judgments to attack on the ground that the tribunal lacked subject matter
jurisdiction. . . . The right of a plaintiff to maintain a suit, while
frequently treated as going to the question of jurisdiction, has been said
to go in reality to the right of the plaintiff to relief rather than to the
jurisdiction of the court to afford it.

Id. at 76–77 (citations omitted). Kazi and its progeny instruct courts to determine
whether the Legislature or Congress intended the statutory requirement to be
jurisdictional. Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 358
(Tex. 2004); Kazi, 12 S.W.3d at 76. One indicator of legislative intent is a statute’s
purpose. Helena Chem. Co. v. Wilkins, 47 S.W.3d 486, 494 (Tex. 2001) (stating that
“[w]hen a statute is silent about the consequences of noncompliance, we look to the
statute’s purpose to determine the proper consequences”). As noted above, the
purpose of the notice requirements under HUD is “to insure that the tenant is
adequately informed of the nature of the evidence against him so that he can
effectively rebut that evidence.” Escalera, 425 F.2d at 862. This purpose would not
be served by allowing a tenant to assert that a court has no subject-matter jurisdiction
over such an action because of an inadequate notice. For instance, assuming that a
tenant received a deficient notice, yet effectively rebutted the evidence and prepared
a proper defense, dismissing the case based on subject-matter jurisdiction would fail
to serve the purpose of the statutory requirement. We conclude that an inadequate
notice does not deprive a court of subject-matter jurisdiction and that a harm analysis
better fulfills the purpose of HUD’s specificity requirements.
          Now, we must determine whether Nealy was harmed by the inadequate notice. 
The court in Moon pointed to the following as evidence of Moon’s harm: (1) Moon
was unprepared to defend the action; (2) Moon filed no answer, made no motion, and
had no pretrial discovery; (3) she testified that she did not know why she was asked
to leave; (4) Moon’s counsel stated that he did not understand the basis for the
eviction and could not prepare a proper defense; and (5) Moon’s counsel failed to
object to evidence of irrelevant past violations, arguably because he did not know
which violations formed the basis for the eviction. 11 S.W.3d at 435. Thus, the court
held that Moon had been harmed by the inadequate notice. Id.
          Unlike in Moon, Nealy did file an answer and pursued pretrial discovery
through written interrogatories and requests for production. Neither Nealy nor
Nealy’s counsel indicated that they could not prepare a proper defense, and Nealy’s
counsel did object to evidence of other alleged lease violations because counsel knew,
or was under the impression, that only Nealy’s alleged mooning of other tenants
formed the basis for her eviction. Finally, SPA’s manager testified that she actually
met with Nealy to discuss Nealy’s undesirable tenant behavior prior to terminating
the tenancy. Under these facts, the present case is more analogous to Hill, in which
the court determined that Hill was not harmed by the lack of notice because (1) Hill
received a termination letter explaining the grounds for termination; (2) Hill was
given 10 days to discuss the letter with management; and (3) Hill retained an attorney,
who filed an answer and pursued pretrial discovery. 182 Ga. App. at 837, 357 S.E.2d
at 290. Under these circumstances, the court concluded that “[i]f [Hill] and her
attorney were not aware of the basis for the termination of her tenancy at the time of
trial, it was not as a result of a deficient termination letter sent by [the management].” 
182 Ga. App. at 837; 357 S.E.2d at 291. We agree with this reasoning and conclude
that Nealy was not harmed by the inadequate notice. See Tex. R. App. P. 44.1(a). 
Accordingly, we overrule her first point of error.
EVIDENTIARY COMPLAINTS
          In her second and third points of error, Nealy complains about the evidence
supporting her eviction. Nealy contends in her third point of error that the trial court
erred in admitting evidence of Nealy’s misconduct that was not disclosed in response
to proper discovery requests. The interrogatory and answer at issue are as follows:
INTERROGATORY NO. FIVE
 
In the Plaintiff’s Complaint For Forcible Detainer in this cause, [SPA]
alleged that [Nealy] breached her lease by engaging in, “Un-desirable
tenant behavior.” Please identify each such act of “un-desirable tenant
behavior” upon which [SPA] relies as a reason for evicting [Nealy] in
this lawsuit. This request requires [SPA] to tell, for each such act, what
was done, by whom and when in breach of the lease.
 
Answer
 
[Nealy] breached her lease by violating the rules of [SPA] and by
violated [sic] the Blue Star Addendum. It was reported that [Nealy]
mooned another tenant.

SPA did not amend or supplement this answer prior to trial. At trial, the trial court
admitted SPA’s evidence that (1) Nealy and one of her guests were the victims of two
separate assaults; (2) Nealy loitered on the apartment’s premises in violation of the
lease; and (3) Nealy rode a four-wheeler or tractor on the apartment sidewalks, nearly
hitting children on one occasion. At all relevant times, Nealy objected to the
admission of this evidence on the ground that these acts were not disclosed in
response to Nealy’s interrogatory.
          The admission or exclusion of evidence rests in the sound discretion of the trial
court and will not be disturbed absent an abuse of that discretion. Owens–Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). In determining whether
there was an abuse of discretion, we must ascertain whether the court acted without
reference to any guiding rules and principles. Downer v. Aquamarine Operators,
Inc., 701 S.W.2d 238, 241–42 (Tex. 1985). 
          Without any citation to authority or explanation, SPA contends that its
response that Nealy violated the apartment rules and the Blue Star Addendum
sufficiently answered the interrogatory request. The sufficiency of the answers to any
given set of interrogatories must be decided on a case-by-case basis. Alexander v.
Barlow, 671 S.W.2d 531, 533 (Tex. App.—Houston [1st Dist.] 1983, writ ref’d
n.r.e.). “There are few general rules regarding answers to interrogatories because of
the unique nature of interrogatories and because the answers thereto are different in
every case.” Jamail v. Anchor Mortgage Servs., Inc., 797 S.W.2d 369, 374 (Tex.
App.—Austin 1990, writ denied). We conclude that SPA’s answer was not sufficient
when made. 
          Nealy’s interrogatory clearly asked SPA to identify the acts of Nealy’s
undesirable tenant behavior by indicating what that act was, who was involved, and
when it occurred. We do not see, and SPA does not explain, how its response that
Nealy violated the rules of the apartment and violated the Blue Star Addendum
addressed any of these questions. Nealy’s question sought specific information, and
SPA’s answer did not provide that specificity. Further, when responding to written
discovery, a party must make a complete response, based on all information
reasonably available to the responding party at that time that the response is made. 
Tex. R. Civ. P. 193.1. At trial, Nealy’s counsel questioned SPA’s manager as to why
the complained-of acts were not included in the response to the interrogatories. 
SPA’s manager testified that it depended on whether the acts occurred before or after
she answered the interrogatory. She also testified that she had “no idea” why those
acts that occurred before discovery were not included in the response. However, a
party has a duty to amend or to supplement a discovery response when that response
is no longer complete and correct. See id. 193.5(a). 
          Because SPA did not amend or supplement its discovery responses prior to
trial, SPA was subject to Rule 193.6(a) of the Texas Rules of Civil Procedure. Rule
193.6(a) provides that a party who fails to make, to amend, or to supplement a
discovery response in a timely manner may not introduce in evidence the material or
information that was not timely disclosed, unless the court finds that there was good
cause for the failure to make, to amend, or to supplement the discovery response
timely, or that the other parties will not be unfairly surprised or prejudiced by the
failure to make, to amend or to supplement. Id. 193.6(a). The party seeking to
introduce the evidence carries the burden of establishing good cause or lack of unfair
surprise or unfair prejudice. Id. 193.6(b). A finding of good cause or lack of unfair
surprise or unfair prejudice must be supported by the record. Id.
          Here, SPA never carried its burden of establishing good cause or lack of unfair
surprise or unfair prejudice. Each time that Nealy objected to the undisclosed
evidence, the trial court immediately overruled her objection. Thus, SPA never
established the exceptions to 193.6, and the trial court never made findings as
required by 193.6(a). See id. 193.6(a). Accordingly, we conclude that the trial court
abused its discretion in admitting evidence regarding the assaults on Nealy and her
guest, Nealy’s loitering on the premises, and Nealy’s driving of the four-wheeler or
tractor on the apartment’s sidewalks.



          We must now determine whether the erroneously admitted evidence harmed
Nealy. When erroneously admitted evidence is merely cumulative or does not
concern a material issue dispositive of the case, the error is harmless. Boothe v.
Hauser, 766 S.W.2d 788, 789 (Tex. 1989); Gee v. Liberty Mut. Fire Ins. Co., 765
S.W.2d 394, 396 (Tex. 1989). Harmfulness is determined by looking at the entire
record to see whether the judgment was controlled by the testimony that should have
been excluded. McKinney v. Nat’l Union Fire Ins. Co., 772 S.W.2d 72, 75 (Tex.
1989). In the trial court’s findings of fact, the court found that (1) Nealy loitered on
the premises, (2) the police “responded to [two] Assault [sic] incident[s] that occurred
at [Nealy]’s unit,” (3) Nealy rode a four-wheeler in the pedestrian areas of the
apartment, and (4) there were two reports that Nealy mooned other tenants or
maintenance workers.


 Because evidence of the first three bases was erroneously
admitted into evidence, whether Nealy was harmed by these additional acts rests on
whether reports of mooning fit within one of the four grounds for evicting Nealy
under the lease. 
          As stated above, the lease provided that SPA could terminate the tenancy for
(1) a serious or repeated violation of the terms and conditions of the lease; (2) a
violation of federal, state, or local law that imposed obligations on Nealy in
connection with the occupancy or use of the contract unit and the premises; (3)
criminal activity; or (4) other good cause. We note that the first three grounds for
eviction—violation of the lease, violation of the law, or criminal activity—each
require actual conduct, not mere allegations. Because the trial court did not find that
Nealy actually mooned anyone, we conclude that reports of mooning do not fit within
the first three grounds for evicting Nealy. We also conclude that mere reports of
Nealy’s mooning others do not amount to good cause for evicting her. Had the trial
court found that Nealy actually mooned others, the analysis would have been
different; however, reports are nothing more than allegations, which this Court will
not term as “good cause” for evicting a tenant in federally subsidized housing.
          Because the reports of mooning do not fit within any of the four grounds for
evicting Nealy under the lease, we conclude that Nealy was harmed by the admission
of the undisclosed evidence.


 Accordingly, we reverse the trial court’s judgment and
remand the cause for further proceedings.
 
 

                                                             Sherry Radack
                                                             Chief Justice
 
Panel consists of Chief Justice Radack and Justices Jennings and Alcala.